[Cite as *State v. Barnes*, 2021-Ohio-842.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,         :

                           No. 109442

v.                                      :

TERRY BARNES, SR.,                      :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 18, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-621345-B

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian Radigan, Assistant Prosecuting Attorney, *for appellee.*

Milton A. Kramer Law Clinic, Case Western Reserve University School of Law, and Andrew S. Pollis, Supervising Attorney, Joseph Shell, Practice Pending Admission, Paul M. M. Willison, Chelsea R. Fletcher, Vito R. Giannola, Renee Monzon, Emily M. Peterson, and Geneva Ramirez, Certified Legal Interns, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant Terry Barnes, Sr., brings this appeal challenging the trial court's judgment denying his motion to withdraw his guilty plea. Appellant argues that the trial court failed to properly weigh the applicable factors in ruling on his motion to withdraw and the trial court abused its discretion by denying the motion. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} The instant appeal pertains to a shootout that occurred at a Marathon gas station at the intersection of East 140th Street and St. Clair Avenue on September 10, 2017. The gas station was a popular gathering place.

{¶ 3} As appellant was filling his gas tank, an argument ensued between him and the victim, Leah McLaurin ("victim"). Appellant left the gas station and returned later on. When he returned, the victim was still at the gas station. Appellant approached the victim to discuss the previous argument.

{¶ 4} After the initial argument between appellant and the victim, someone contacted the victim's brother, codefendant Jeffrey McLaurin, and informed him that appellant and the victim had been arguing. As appellant and the victim were conversing, Jeffrey, who was armed, confronted appellant who was also armed. In response to Jeffrey's confrontation, appellant drew his weapon.

{¶ 5} Both appellant and Jeffrey fired their weapons. A third individual fired shots from behind a gas pump. The third individual was not identified at the time of the shooting, and this individual's identity remains unknown.

{¶ 6} The victim sustained a gunshot wound to her thigh from which she died. Appellant sustained a gunshot wound to the elbow during the exchange of fire. Two other bystanders sustained gunshot wounds during the shootout.

{¶ 7} There were three shooters that exchanged shots at the gas station: appellant, codefendant Jeffrey McLaurin, and a third shooter that was not identified and remains unknown. Ballistic evidence was unable to determine who fired the shot that killed the victim.

{¶ 8} Appellant was charged for his involvement in the shooting. On September 20, 2017, a Cuyahoga County Grand Jury returned a seven-count indictment charging appellant with (1) murder, in violation of R.C. 2903.02(B), (2) voluntary manslaughter, in violation of R.C. 2903.03(A), (3)-(5) felonious assault, in violation of R.C. 2903.11(A)(2), and (6)-(7) discharge of firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3).[1] All seven counts contained one- and three-year firearm specifications. Appellant pled not guilty to the indictment during his arraignment on September 25, 2017.

{¶ 9} The parties reached a plea agreement during pretrial proceedings. On September 18, 2019, appellant pled guilty to an amended Count 2, involuntary manslaughter, a third-degree felony in violation of R.C. 2903.04(B), without the underlying firearm specifications. The remaining counts and specifications charged

_____

[1] Appellant's codefendant Jeffrey McLaurin was charged in Cuyahoga C.P. No. CR-17-621345-A, with the same seven counts and an additional count of having weapons while under disability.

in the indictment were nolled. The trial court referred appellant to the probation department for a presentence investigation report and set the matter for sentencing.

{¶ 10} On October 31, 2019, appellant filed a presentence motion to withdraw his guilty plea. Therein, appellant requested to withdraw his guilty plea because he is innocent and acted in self-defense, and that he is entitled to the benefit of the self-defense burden-shifting law under H.B. 228 (effective March 28, 2019).

{¶ 11} Appellant filed a supplement to his motion to withdraw on November 6, 2019. Therein, appellant argued that he did not see one particular video from inside the gas station and the accompanying audio footage until after he pled guilty. Defense counsel "assumed [appellant] had viewed the footage with his prior counsel when the Public Defender's Office was handling the case." After viewing the video and audio footage, appellant purportedly "pointed out to defense counsel a number of very useful pieces of potentially exculpatory evidence." Counsel asserted that the video "will establish that co-defendant, Jeffrey McLaurin, fired the first shots in this case," which would bolster appellant's self-defense claim.

{¶ 12} The state filed a brief in opposition to appellant's motion to withdraw on November 12, 2019. Therein, the state argued that appellant's motion should be denied because (1) the trial court complied with Crim.R. 11 during the change-of-plea hearing, (2) appellant did not express at any time during the change-of-plea hearing that he did not understand one of the court's advisements, (3) appellant did not indicate he had been threatened or forced to enter the guilty plea, nor that any promises had been made to him to induce him to enter the plea, (4) appellant had

sufficient understanding of the nature of the charges and potential punishments, and he never expressed confusion or asked for clarification, (5) appellant is a "well-educated, intelligent, college graduate with a master's degree in Business Administration," (6) appellant works in the legal field as a paralegal, and as a result, he was familiar with the legal process and had a clear understanding of the nature of the charges, (7) the state, appellant's codefendant, and the victim's family would be prejudiced by permitting appellant to withdraw his guilty plea, (8) appellant was represented by competent counsel, (9) appellant's last-minute motion to withdraw, filed on the morning of the sentencing hearing, was nothing more than a change of heart, and (10) the issues that appellant identified in his motion to withdraw and supplement were not new — they existed in September 2017 and did not come to light after appellant pled guilty.

{¶ 13} On November 15, 2019, the trial court held a hearing on appellant's motion to withdraw his guilty plea. The trial court entertained arguments from defense counsel and the state and gave appellant an opportunity to explain why he wanted to withdraw his guilty plea. With the exception of the ineffective assistance of counsel argument, the trial court rejected the arguments based upon which appellant requested to withdraw his guilty plea. The trial court appointed a new attorney to represent appellant and scheduled a hearing on appellant's motion to withdraw.

{¶ 14} The trial court held a second hearing on appellant's motion to withdraw on December 18, 2019. During the hearing, the trial court entertained oral

arguments from the state and appellant's new defense attorney. The trial court also heard testimony from appellant and the four attorneys that had represented him in the case. The public defenders that represented appellant between September 2017 and June 2018 testified. The two attorneys that were assigned to represent appellant in July 2018, after the public defender's office withdrew based on a conflict of interest, also testified at the hearing. The trial court continued the hearing for the purpose of reviewing the evidence that appellant purportedly had not reviewed until after pleading guilty.

{¶ 15} On December 23, 2019, the trial court reconvened the hearing on appellant's motion to withdraw. The trial court indicated that it reviewed the video footage at issue and the transcript from the previous hearing on the motion to withdraw. The trial court denied appellant's motion to withdraw his guilty plea, concluding that there was not a reasonable basis for appellant to withdraw his guilty plea.

{¶ 16} The trial court proceeded immediately to sentencing. The trial court sentenced appellant to community control sanctions for a period of five years. The trial court's sentencing entry was journalized on December 30, 2019.

{¶ 17} On January 29, 2020, appellant filed the instant appeal challenging the trial court's judgment. Appellant filed a motion for court-appointed appellate counsel, which this court granted on February 7, 2020.

{¶ 18} Appellant assigns one error for review:

I.  The trial court erred in denying [appellant's] motion to withdraw his guilty plea.

## II. Law and Analysis

{¶ 19} In his sole assignment of error, appellant argues the trial court erred in denying his motion to withdraw his guilty plea.  Appellant contends that the relevant factors weighed heavily in favor of granting his motion to withdraw because (1) appellant had a legitimate reason to withdraw his guilty plea — his defense attorneys did not make the potentially exculpatory evidence available to him before he pled guilty, (2) the state would not be prejudiced by permitting appellant to withdraw his guilty plea, and (3) appellant's motion to withdraw was filed within a reasonable time after learning about the potentially exculpatory evidence.

{¶ 20} This court reviews a trial court's ruling on a presentence motion to withdraw a guilty plea for an abuse of discretion.  *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992).  The trial court's judgment must be affirmed unless it is shown that the trial court acted unreasonably, arbitrarily, or unconscionably in denying the defendant's motion to withdraw his or her plea.  *See, e.g., State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, ¶ 36, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), and *Xie* at 527.

{¶ 21} Generally, "a presentence motion to withdraw a guilty plea should be freely and liberally granted."  *Xie* at 527.  A defendant does not, however, have an "absolute right" to withdraw his or her plea, even before the imposition of sentence.  *Id.* at paragraph one of the syllabus.  Before ruling on a defendant's presentence

motion to withdraw a plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawing the plea. *Id.* At the hearing, the defendant is entitled to "'full and fair consideration'" of his or her motion to withdraw. *State v. Hines*, 8th Dist. Cuyahoga No. 108326, 2020-Ohio-663, ¶ 8, quoting *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980). The determination of whether circumstances warranting withdrawal of the guilty plea exist is "'within the sound discretion of the trial court[.]'" *Xie* at 526, quoting *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir.1978). A defendant's mere "change of heart" is not sufficient to justify withdrawing his or her guilty plea. *See, e.g., Musleh* at ¶ 35; *State v. Shaw*, 8th Dist. Cuyahoga No. 102802, 2016-Ohio-923, ¶ 6.

> Ohio courts have identified a list of nonexhaustive factors for trial courts to consider when deciding a presentence motion to withdraw a plea. *See, e.g., State v. Walcot*, 8th Dist. Cuyahoga No. 99477, 2013-Ohio-4041, ¶ 19. Those factors include (1) whether the motion was made in a reasonable time, (2) whether the motion states specific reasons for withdrawal, (3) whether the defendant understood the nature of the charges and the possible penalties, (4) whether the defendant was perhaps not guilty or had a complete defense, and (5) whether the state would be prejudiced by the withdrawal of the plea. *Hines* at ¶ 10; *State v. Bradley*, 8th Dist. Cuyahoga No. 108294, 2020-Ohio-30, ¶ 4; *State v. Heisa*, 8th Dist. Cuyahoga No. 101877, 2015-Ohio-2269, ¶ 19.

*State v. Bogarty*, 8th Dist. Cuyahoga No. 109143, 2020-Ohio-4996, ¶ 22.

{¶ 22} A trial court does not abuse its discretion in denying a defendant's presentence motion to withdraw a guilty plea where (1) the defendant is represented by highly competent counsel, (2) the defendant was afforded a full hearing pursuant

to Crim.R. 11 before he or she entered his plea, (3) after the motion to withdraw is filed, the defendant is given a complete and impartial hearing on the motion, and (4) the record reveals that the court gave full and fair consideration to the plea withdrawal request (the "*Peterseim* factors"). *Peterseim* at paragraph three of the syllabus; *see also State v. Armstrong*, 8th Dist. Cuyahoga No. 103088, 2016-Ohio-2627, ¶ 17. "[T]he good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *State v. Smith*, 49 Ohio St.2d 261, 263, 361 N.E.2d 1324 (1977), paragraph two of the syllabus.

{¶ 23} In the instant matter, the record reflects that the trial court referenced the various factors that it would consider in ruling on appellant's motion to withdraw during the December 18, 2019 hearing. The trial court indicated that it would consider the following factors in ruling upon appellant's motion: (1) whether the state would be prejudiced by permitting appellant to withdraw his plea, (2) whether appellant was represented by highly competent counsel, (3) whether appellant had a full Crim.R. 11 hearing before pleading guilty, (4) whether there were specific reasons outlined in appellant's motion to withdraw, (5) whether appellant understood the nature of the charges and the possible penalties under the guilty plea, and (6) whether appellant has a complete defense to the crime or was not guilty. (Tr. 109-110.)

{¶ 24} Regarding the first *Peterseim* factor, the record reflects that appellant was represented by highly competent counsel in the trial court. During the change-of-plea hearing, appellant confirmed that he was satisfied with the representation

provided by his lead attorney and co-counsel.  Appellant agreed with the trial court's statement that appellant had "two excellent attorneys[.]"  (Tr. 34.)

{¶ 25} During the November 15, 2019 hearing on appellant's motion to withdraw, the trial court explained that the only basis upon which appellant could pursue withdrawing his guilty plea was ineffective assistance of counsel.  The trial court concluded that "none of these other reasons outlined in [appellant's] motion are well taken."  (Tr. 47.)  Appellant alleged, for the first time, that he had "ineffective counsel."  (Tr. 54.)  In support of his ineffective assistance claim, appellant asserted, "You can tell from the late motions.  You've got my previous lawyer, about his tardiness in filing motions and responding to the Court's orders.[2]  So I guess it kind of — I had ineffective counsel, with all due respect, your Honor."  (Tr. 54.)

{¶ 26} During the December 18, 2019 hearing on appellant's motion to withdraw, all four of the attorneys that represented appellant detailed their credentials and extensive experience working on murder cases.  The trial court concluded that there was no question that appellant was represented by highly competent counsel at all stages during the trial court's proceedings.  (Tr. 109.)

{¶ 27} Regarding the second *Perterseim* factor, the record reflects that the trial court afforded a full Crim.R. 11 hearing before appellant pled guilty.  Defense counsel conceded during closing arguments that the trial court's Crim.R. 11 colloquy during the change-of-plea hearing was "impeccable" and "absolutely complied with

---

[2] Appellant appeared to be referencing the sentencing memorandum filed by defense counsel on October 30, 2019, when the trial court ordered the parties to submit sentencing memorandum by October 9, 2019.

the law." (Tr. 112.)  During the December 18, 2019 hearing, the trial court explained that it reviewed the entire transcript of the change-of-plea hearing, and concluded that appellant had a full Crim.R. 11 hearing before pleading guilty.

{¶ 28} Regarding the third and fourth *Peterseim* factors, the record reflects that appellant was given a complete and impartial hearing on his motion to withdraw, and the trial court gave full and fair consideration to appellant's plea withdrawal request.  The trial court continued the sentencing hearing set for October 31, 2019, to allow appellant to supplement the motion to withdraw and to allow the state to respond to the motion.  The trial court held an initial hearing on appellant's motion to withdraw on November 25, 2019.  When it became apparent that appellant was requesting to withdraw his guilty plea based, in part, on an ineffective assistance of counsel claim, the trial court appointed a new attorney to represent appellant and scheduled another hearing on appellant's motion.  The trial court held a second hearing on appellant's motion to withdraw on December 18, 2019, during which the court entertained oral arguments from the parties.  Defense counsel presented the testimony of appellant and the four attorneys that represented him in the trial court during the hearing.  Finally, the trial court reviewed the evidence that appellant alleged he had not seen at the time he pled guilty.

{¶ 29} Based on the foregoing analysis regarding the *Peterseim* factors, we are unable to conclude that the trial court's judgment denying appellant's motion to withdraw was unreasonable, arbitrary, or unconscionable.  The record supports the

trial court's conclusion that appellant failed to demonstrate a reasonable basis for withdrawing his guilty plea.

{¶ 30} In addition to the aforementioned *Peterseim* factors, this court has set forth the following factors that may be considered in reviewing a trial court's judgment on a defendant's presentence motion to withdraw a guilty plea: "(1) the motion was made in a reasonable time; (2) the motion stated specific reasons for withdrawal; (3) the record shows that the defendant understood the nature of the charges and possible penalties; and (4) the defendant had evidence of a plausible defense." *Heisa*, 8th Dist. Cuyahoga No. 101877, 2015-Ohio-2269, at ¶ 19, citing *State v. Pannell*, 8th Dist. Cuyahoga No. 89352, 2008-Ohio-956, ¶ 13, citing *State v. Benson*, 8th Dist. Cuyahoga No. 83178, 2004-Ohio-1677.

{¶ 31} As an initial matter, we find no merit to appellant's argument that the trial court "failed to indicate that it considered these [additional] factors weighing in [his] favor." Appellant's brief at 14. As noted above, the trial court specifically referenced these additional factors during the December 18, 2019 hearing, and indicated that it would consider these factors in ruling on appellant's motion to withdraw.

{¶ 32} Regarding the first *Heisa* factor, appellant pled guilty on September 18, 2019. The sentencing hearing was originally set for October 16, 2019; the trial court reset the sentencing hearing for 1:00 p.m. on October 31, 2019, due to the court's involvement in an unrelated trial. Appellant's motion to withdraw was filed on October 31, 2019, at 12:47 p.m. The trial court's October 31, 2019 journal

entry provides, in relevant part, "[d]efense counsel notified the court that a motion to withdraw guilty plea was filed this morning."

{¶ 33} Appellant contends that his motion to withdraw was filed "within a reasonable time after learning about the new evidence." Appellant's brief at 12. In support of his argument, appellant asserts that he learned about the existence of an audio recording and heard the audio footage on October 30, 2019, the day before the matter was set for sentencing.

{¶ 34} Neither the motion to withdraw nor supplement thereto specifies when appellant viewed the video and accompanying evidence for the first time. In fact, the original motion to withdraw, filed on October 31, 2019, made no mention of any video or audio evidence that appellant did not see until after he pled guilty. This argument was raised for the first time in appellant's supplement to his motion to withdraw, filed on November 6, 2019.

{¶ 35} Regarding the second *Heisa* factor, the record reflects that appellant's motion and supplement thereto stated specific reasons for withdrawing his guilty plea. Appellant argued that he did not review a potentially exculpatory video of the shooting and an accompanying audio recording at the time he pled guilty. After reviewing this evidence for the first time after pleading guilty, appellant "pointed out to defense counsel a number of very useful pieces of potentially exculpatory evidence. * * * [T]he undersigned represents to the Court that it will establish that co-defendant, Jeffrey McLaurin, fired the first shots in this case. Obviously, this will

go along [sic] way to solidifying [appellant's] self-defense claim."  Supplement at 1-2.

{¶ 36} Regarding the third *Heisa* factor, the record reflects that appellant understood the nature of the charges against him and the possible penalties he faced.  As noted above, the trial court held a full and thorough Crim.R. 11 hearing before appellant pled guilty.  Appellant did not express confusion or ask for clarification at any point during the change-of-plea hearing.  Nor did appellant indicate that he did not understand one of the trial court's advisements.

{¶ 37} Regarding the fourth *Heisa* factor, the record reflects that appellant had evidence of a plausible defense, specifically self-defense.  However, appellant had evidence of this plausible defense at the time he pled guilty, and had discussed the issue of self-defense with the attorneys that represented him.  Appellant testified during the December 18, 2019 hearing on his motion to withdraw that he discussed the issue of self-defense with the public defenders that represented him between September 2017 and July 2018.  Appellant discussed the issue of self-defense with the two new attorneys that were assigned to represent him in July 2018.

{¶ 38} Appellant testified during the December 18, 2019 hearing that it was his desire to go to trial from the very beginning but his attorneys advised him that certain aspects of the case would be an uphill battle.  After seeing the video and accompanying audio footage in his entirety, however, appellant asserted, "I don't think I's [sic] going to be that hard to win in trial to be honest."  (Tr. 64.)

**{¶ 39}** In his brief, appellant argues that the "new" video and audio footage that he did not see until after he pled guilty "substantiates his claim that he shot in self-defense." Appellant's brief at 3. Appellant's claim is contradicted by other evidence in the record.

**{¶ 40}** The trial court continued the matter to review the "new" video and audio footage that appellant did not see until after he pled guilty. After reviewing this evidence, the trial court did not find appellant had a reasonable basis for withdrawing his guilty plea.

**{¶ 41}** Appellant's lead counsel testified that based on the video and audio footage at issue, he would still recommend that appellant accept the state's plea agreement:

> [appellant's] exposure is so great here with a life sentence that the evidence that's been discussed as being exculpatory is [appellant's] interpretation of which firearms made a specific noise outside the gas station. * * * I think then we have got to be able to distinguish that a gun of a certain caliber made a different noise or what order they were in, and I don't think that dictates an automatic self-defense even if you had an expert to say that and I don't think you can.
>
> I will give you an example. Just because one gun was louder than another I don't believe in any respect dictates or mandates it has to be of a higher or lower caliber. I think it's the construction of the guns, the proximity to whatever device is picking up the noise. I think many other factors go into that.

(Tr. 87.)

**{¶ 42}** The state argued during closing arguments that the third-degree felony involuntary manslaughter offense to which appellant pled guilty, and the amendment from the originally charged offenses of murder and voluntary

manslaughter, were supported by the video footage of the shootout that appellant reviewed before pleading guilty. The state asserted that you would not be able to determine from the audio footage which sound came from which gun, or which shooter opened fire first. The state maintained that the audio footage at issue would not have been consequential because it "has two gunshots going off almost simultaneously[.]" (Tr. 119.)

{¶ 43} Appellant's ineffective assistance of counsel claim in the trial court was based on counsel's purported failure to provide him with all of the evidence, including the video and audio footage at issue, so that appellant had an opportunity to review all of the footage before pleading guilty. In this appeal, appellant argues, for the first time, that trial counsel was ineffective for (1) failing to hire an expert witness to review the audio footage, and (2) failing to challenge the "counsel only" designation of all the video and audio footage obtained from the gas station. Because appellant failed to raise either of these grounds for withdrawing his guilty plea in the trial court, these grounds cannot support reversal of the trial court's decision in this appeal. *See State v. Moore*, 8th Dist. Cuyahoga Nos. 108962, 108963, and 108964, 2020-Ohio-3459, ¶ 58. "'[A] party cannot present new arguments for the first time on appeal that were not raised below, and a trial court cannot be said to have abused its discretion by failing to consider arguments that were never presented to it.'" *State v. Luton*, 8th Dist. Cuyahoga No. 106754, 2018-Ohio-4708, ¶ 65, quoting *State v. D.K.*, 8th Dist. Cuyahoga No. 106539, 2018-Ohio-2522, ¶ 17; *see also State v.*

*Pratts*, 8th Dist. Cuyahoga No. 104235, 2016-Ohio-8053, ¶ 43 ("A party may not raise for the first time on appeal an argument that could have been raised below.").

{¶ 44} Nevertheless, we find appellant's argument about defense counsel's failure to hire an expert witness to be entirely speculative. Appellant appears to suggest that had defense counsel hired an expert, the expert could have determined whether (1) the audio footage was relevant to appellant's guilt or innocence, or (2) appellant or codefendant McLaurin fired the first shot.

{¶ 45} As noted above, appellant's lead attorney, who had been handling murder cases for 25 years, opined that an expert would not have been able to discern from the audio recording which gunshot noise was attributable each of the three guns that were fired during the shootout, and which order the guns were fired in. Furthermore, even if the expert witness could make these determinations, counsel opined that it would not automatically establish that appellant acted in self-defense.

{¶ 46} To the extent that appellant challenges the weight the trial court afforded to the relevant factors, appellant's argument is misplaced. Like the determination of whether circumstances exist that warrant withdrawing a plea, the determination of how much weight to afford to the applicable factors is within the trial court's sound discretion. Although appellant argues that the trial court failed to explain how it weighed the relevant factors, appellant fails to identify any authority that requires a trial court to make specific findings regarding its consideration of the applicable factors.

{¶ 47} Based on the foregoing analysis regarding the *Heisa* factors, we are unable to conclude that the trial court's judgment denying appellant's motion to withdraw was unreasonable, arbitrary, or unconscionable.

{¶ 48} Finally, the trial court considered whether the state would be prejudiced by permitting appellant to withdraw his plea. In its brief in opposition to appellant's motion to withdraw, the state argued that it would be prejudiced by permitting appellant to withdraw the guilty plea. In support of its argument, the state asserted that the case had been pending since September 2017; the more time that elapses, the more likely that witnesses will move, change phone numbers, or become less willing to participate.

{¶ 49} The state also explained that appellant's plea withdrawal request would prejudice codefendant Jeffrey McLaurin because Jeffrey and appellant entered a "joint" or "package" plea agreement under which appellant pled guilty to third-degree felony involuntary manslaughter and Jeffrey pled guilty to third-degree felony involuntary manslaughter and third-degree felony having weapons while under disability. The state emphasized that the parties' plea negotiations occurred over approximately one and one-half years. The state argued that withdrawing appellant's plea and further delaying the matter would adversely impact the victim's family who believed the matter had been resolved and that they had some type of closure.

**{¶ 50}** During the first hearing on appellant's motion to withdraw, the state detailed how the state would be prejudiced by permitting appellant to withdraw his plea:

> Now, as you know, Judge, people move. People change phone numbers. Witnesses leave. We tell witnesses when a case is pled out that they are no longer needed. You know what happens, Judge, after telling witnesses they're no longer needed? Do you think they continue to answer the phone calls or respond to subpoenas? Judge, they do not. These are the types of things that, when a case is resolved and it is put forward and everybody can move on with their lives[.]

(Tr. 51.)

**{¶ 51}** The state emphasized these concerns during closing arguments at the second hearing on appellant's motion, stating that withdrawing appellant's plea would result in consequences to the state, witnesses, appellant's codefendant, and the victim's family members. The state confirmed that if appellant's motion to withdraw was granted, the state would also withdraw the codefendant's plea. The state explained that the matter would have to be further delayed for approximately six months, until "sometime in the summer," because the court would have to appoint new attorneys to represent appellant and his codefendant at trial. Accordingly, the trial would not commence until nearly three years after the shooting occurred.

**{¶ 52}** In this appeal, appellant argues that the state made no showing of actual prejudice and that the state's argument that it would be prejudiced by permitting appellant to withdraw his guilty plea was "nothing more than speculation[.]" Appellant's brief at 27. Appellant's argument is misplaced.

{¶ 53} Whether the state would be prejudiced by a defendant withdrawing his or her plea is one factor in a nonexhaustive list of factors for a trial court to consider in ruling on a defendant's motion to withdraw a guilty plea. Appellant has failed to identify any authority or case law that requires the state to conclusively establish that it would suffer actual prejudice from a defendant withdrawing a plea.

{¶ 54} After reviewing the record, and for all of the foregoing reasons, we find no basis upon which to conclude that the trial court's judgment denying appellant's motion to withdraw his guilty plea was unreasonable, arbitrary, or unconscionable. Appellant's sole assignment of error is overruled.

{¶ 55} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR